819 So.2d 807 (2002)
C.A.M., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-2970.
District Court of Appeal of Florida, Fourth District.
July 10, 2002.
Carey Haughwout, Public Defender, Margaret Good-Earnest and Samuel A. Walker, Assistant Public Defenders, West Palm Beach, for appellant.
*808 Robert A. Butterworth, Attorney General, Tallahassee, and Donna L. Eng, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
FARMER, J.
In denying the motion for rehearing, we write to explain why Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), does not require a different result. Dickerson addressed the question "whether the Fourth Amendment permits the seizure of contraband detected through a police officer's sense of touch during a protective patdown search." 508 U.S. at 368, 113 S.Ct. 2130. In that case, the Minnesota Supreme Court had held that the "plain view" doctrine should not be extended to include contraband detected through an exercise of the sense of touch rather than visually. That court had concluded that the sense of touch is less reliable than the sense of sight, and therefore the plain view doctrine should be limited to contraband seen rather than felt. 508 U.S. at 370, 113 S.Ct. 2130. In rejecting the state court's conclusions, the Supreme Court held that "tactile discoveries" of contraband are not per se barred by the Fourth Amendment where the object so detected is "immediately apparent." 508 U.S. at 375, 113 S.Ct. 2130. Applying the "immediately apparent" requirement to the case at hand, the Court concluded that the seizure in Dickerson was invalid because the officer did more than merely patdown the person; the officer "examined [the lump] with [his] fingers" and slid it to ascertain its nature. Thus because in reality the patdown became a search, it was impermissible under the Fourth Amendment.
The facts in Dickerson justified the limited intrusion of a patdown:
"the officers observed respondent leaving a 12-unit apartment building.... The officer, having previously responded to complaints of drug sales in the building's hallways and having executed several search warrants on the premises, considered the building to be a notorious `crack house.' According to testimony credited by the trial court, respondent began walking toward the police but, upon spotting the squad car and making eye contact with one of the officers, abruptly halted and began walking in the opposite direction. His suspicion aroused, this officer watched as respondent turned and entered an alley on the other side of the apartment building. Based upon respondent's seemingly evasive actions and the fact that he had just left a building known for cocaine traffic, the officers decided to stop respondent and investigate further."
508 U.S. at 386-89, 113 S.Ct. 2141. In contrast, here the facts involve the officer accosting defendant as he exited a car that had just pulled into a residential driveway. There was no factual basis for suspecting narcotics; no activity of the kind usually associated with narcotics transactions; this was not an area involving frequent such transactions; and there was no furtive conduct on defendant's part. The only reason for the patdown was that defendant had a bulge in his pocket. The nature and contours of the bulge were not described; it was not likened to that of a firearm, for example, or other weapon.
Our decision in this case did not rest on any conclusion that the officer's seizure of the contraband was impermissible simply because it resulted from a tactile discovery as opposed to having been seen in plain view. Rather, we examined the totality of the circumstances and found them insufficient to support the Terry stop because the officer articulated at best a mere suspicion that was unsupported by facts that would authorize even the kind of limited intrusion involved. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 *809 L.Ed.2d 911 (1996) (question of reasonable suspicion to stop reviewed de novo); and Connor v. State, 803 So.2d 598 (Fla.2001) (appellate courts accord presumption of correctness to trial court's rulings on motions to suppress with regard to determination of historical facts, but must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendments and the equivalent provision of the state constitution). We contrasted the officer's account of what he saw and ascertained up to the moment of the patdown in this case with the more detailed facts given by the officer in Doctor v. State, 596 So.2d 442 (Fla. 1992), where a Terry stop was deemed justified.
In short, Dickerson affords no basis for a different outcome. If indeed Dickerson has the effect of overruling the Florida Supreme Court's earlier decision in Doctor, the Florida Supreme Court will have to say so; we cannot.
REHEARING DENIED.
MAY, J., concurs.
TAYLOR, J., dissents without opinion.